**UNITED STATES of America ex rel. Charles MATHIS, Appellant,**

v.

**Alfred T. RUNDLE, Superintendent State Correctional Institution, Philadelphia, Pennsylvania, Appellee.**

No. 16809.

United States Court of Appeals Third Circuit.

Submitted on Briefs Jan. 15, 1968.

Decided May 7, 1968.

---

Michael O'S. Floyd, Drinker, Biddle & Reath, Philadelphia, Pa., for appellant.

Welsh S. White, Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa. (Alan J. Davis, Asst. Dist. Atty., Chief, Appeals Division, Richard A. Sprague, First Asst. Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

Before HASTIE, Chief Judge, GANEY, Circuit Judge, and WEINER, District Judge.

## OPINION OF THE COURT

WEINER, District Judge.

The substance of this appeal concerns the too characteristic predicament of an indigent criminal defendant who is represented at trial by counsel hastily appointed by the court very shortly before trial itself. In the instant case, counsel for appellant was a voluntary defender, appointed on the eve of trial, who had not had a chance to interview his client but had only been able to consult the notes of a colleague who had previously been able to do so, as well as to spend about half an hour with witnesses in the courtroom just prior to the time of trial.

Appellant herein got into a brawl in a semi-private club on November 7, 1963. During this fray he stabbed another, who subsequently became the complaining witness in appellant's trial in the Court of Common Pleas on July 9 & 10, 1964. Appellant was there convicted of aggravated assault and battery, and of carrying a concealed deadly weapon. He pursued his post-conviction remedies through the state courts, and then sought a writ of habeas corpus in the federal district court below, all without success.

The chief question here before us is whether appellant was deprived of the effective assistance of counsel to which the sixth amendment to the constitution of the United States entitles him. More specifically, the question we are called upon to decide is whether appellant is correct in his contention that "ineffectiveness of counsel derived from the fact

that he wasn't appointed soon enough to prepare his case." [1]

The current legal standards under federal common law by which adequacy of time in which court-appointed counsel must prepare their cases is measured against the sixth amendment imperative of assistance of counsel are generally *ad hoc* and often lax. As Judge Higginbotham correctly pointed out in United States ex rel. Kelley v. Rundle, 242 F. Supp. 708, 709–710 (E.D.Pa.1965), the substantive content of this right to effective counsel began to take shape with Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where as conservative a jurist as Mr. Justice Sutherland said, generally, that, where it was the duty of a state court to appoint counsel (a duty at that time encompassing a much lesser scope of proceedings than at present), then

> that duty is not discharged by an assignment at such a time or under such circumstances to preclude the giving of effective aid in the preparation and trial of the case.

Id. at 71, 53 S.Ct. at 65.

Since that starting point, the federal courts of appeals have adopted generally a functional test, by the standards of which counsel appointed to defend an indigent criminal only shortly before trial would still be found to have afforded defendant adequate assistance if the latter could not have been shown to have suffered substantive harm by counsel's late appointment. In general, this rule has been

> that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation.

Bell v. State of Alabama, 367 F.2d 243, 247 (5th Cir. 1966), cert. denied, 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788 (1967) (emphasis removed), citing Williams v. Beto, 354 F.2d 698, 704 (5th Cir. 1965). The rhetoric is similar to that employed when speaking of the standard by which excessive verdicts are to be reviewed. Alternatively, this rule has been explained as signifying 'that

> absence of effective representation must mean representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and to correct it.

In re Ernst's Petition, 294 F.2d 556 (3d Cir. 1961) (Hastie, J.).

As evinced by both these examples, the criteria for measuring adequate representation have in the past often been articulated on a highly abstract plane, in conclusory language; and the rulings have been made on a case-by-case basis. If one thing has emerged as sure, it is only that "[t]he time of appointment of counsel, in itself, does not establish ineffective assistance," United States ex rel. Spears v. Rundle, 268 F.Supp. 691, 700 (E.D.Pa.1967); accord, United States v. Ray, 351 F.2d 554, 555 (4th Cir. 1965). Indeed, it has even been held, the fact that counsel was not appointed until the day of trial itself does not on its face deny defendant the effective assistance of counsel, e. g., Mathis v. State of North Carolina, 266 F.Supp. 841 (M.D.N.C.1967).

A few cases have granted a new trial on appeal where it has appeared to the reviewing court, for reasons not always clearly set out, that the time for consultation between counsel and defendant, on the facts of a given particular case, was insufficient, e. g., United States v. Helwig, 159 F.2d 616, 618 (3d Cir. 1947) (one minute); Townsend v. Bomar, 351 F.2d 499, 500–502 (6th Cir. 1965) (15–20 minutes or 1–2 hours).

More characteristically, the courts in the past have granted a new trial where they have found present *both* too little time for preparation, consultation, or investigation by counsel *and* evident injury

---

1. Notes of testimony at the habeas corpus hearing below, at 35.

to defendant in the record, e. g., Johnson v. United States, 328 F.2d 605, 606 (trial counsel himself asserted that procedures in appointing him did not insure fair trial because they did not afford defendant experienced counsel with *"time or inclination* to properly [sic] investigate and prepare for said trial") (emphasis in original); Roberts v. Dutton, 368 F.2d 465, 474–475 (5th Cir. 1966) (one of two lawyers spoke with defendant for 40 minutes; "[t]he trial itself evidences a total lack of preparation on the part of counsel").

Of late, however, there has been developing a more liberal and understanding rule as to the time required for consultation and investigation between the appointment of counsel by the court and the trial itself, as evidence by successive holdings in the Fourth Circuit. There the attitude seems to have been adopted from Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942), where Mr. Justice Murphy warned:

> The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.

At the outset, the Fourth Circuit required, as some other courts still do, that defendant bear the burden of affirmatively proving injury from hasty appointment of counsel. Reasoning that sufficiency of consultation and preparation depends upon the nature and difficulty of the matter involved, the court held that even six hours between appointment and trial might not evidence inadequate assistance of counsel such as to deprive defendant of his constitutional right, Baldwin v. United States, 260 F.2d 117, 118 (4th Cir. 1958), cert. denied, 360 U.S. 938, 79 S.Ct. 1463, 3 L.Ed.2d 1550 (1959); accord, United States v. Ray, supra.

Beginning in 1962, however, the Fourth Circuit moved toward the evolution of the new, more liberal rule which the crowded status of state criminal dockets and widespread practice of last-minute appointment of counsel rendered mandatory. In a display of consternation over the problem of late appointment and the attendant hazard of overhasty preparation, the court emphasized the constitutional necessity of providing indigent criminal defendants with *substantial* legal assistance:

> Pro forma entry of an appearance without study or preparation for useful participation in the trial is not a satisfaction of the constitutional rights of the accused.
>
> The petition may turn out to be an abuse—a complete fabrication born of a prisoner's desire to shift the blame for his predicament from his own shoulders upon those of a conscientious lawyer who did his full professional duty at a personal sacrifice. But this may not be surmised; there should be a hearing to determine the truth.

Turner v. State of Maryland, 303 F.2d 507, 511 (4th Cir. 1962). After ordering a hearing on this issue, the Fourth Circuit in a subsequent phase of the case developed further its rule reversing the prior assumption as to the burden of proof on the question of adequacy of a tardy appointment:

> Normally, in the absence of clear proof that no prejudice resulted, we should be obliged to treat the lawyer's representation as falling short of the standards of due process as guaranteed by the Fourteenth Amendment [where, as here, counsel failed to consult with his client until less than half an hour before trial].

Turner v. State of Maryland, 318 F.2d 852, 854 (4th Cir. 1963). In a further development, the requirement that appellant affirmatively show prejudice was omitted. As the court said, after reciting elements possibly mishandled by appointed counsel at trial:

> Whether any attorney would actually have advised petitioner differently because of these factors, or others not disclosed in the record, is not the question. The question is not one that can now be answered with any degree of

certainty, nor need it be answered. The point is that because of the haste that marked the entire process this lawyer was simply in no position to evaluate his case and make considered judgments on these matters [*inter alia,* of whether to encourage or discourage his client's plea of guilty].

Martin v. Virginia, 365 F.2d 549, 553–554 (4th Cir. 1966).

Finally, a fully developed procedural rule has been enunciated, with fundamental substantive consequences, in this area of court-appointed counsel for indigent defendants. Although the court allowed that it had in the past

> on occasion found that effective counsel was not denied, notwithstanding the late time of appointment or lack of preparation of counsel where the record showed affirmatively that an accused was not prejudiced thereby,

Twiford v. Peyton, 372 F.2d 670, 673 (4th Cir. 1967); nonetheless, the court stressed,

> we have implied that these deplorable practices are inherently prejudicial, and a mere showing of them constitutes a *prima facie* case of denial of effective assistance of counsel, so that the burden of proving lack of prejudice is shifted to the state.

Id.

In an application of this rule placing the risk of nonpersuasion on the state, once appellant's allegations of insufficient opportunity for preparation by counsel have satisfied the judge in the habeas corpus hearing that a prima facie case has been made out, the Fourth Circuit recently characterized the gradual evolution in its own thinking:

> As the concept of the Sixth Amendment right has broadened to encompass the provision of counsel for indigents, so too the *standards* to which appointing courts and appointed counsel must adhere have become more exacting. Courts are required to allow counsel sufficient time to inform themselves fully, to reflect maturely and to prepare thoroughly in the cases to

which they are assigned, and courts can no longer tolerate perfunctory performance by appointed lawyers of the duty owed to indigent defendants.

Fields v. Peyton, 375 F.2d 624, 628 (4th Cir. 1967) (emphasis in original).

In that case, where an attorney had been hastily appointed moments before trial and had then consulted with his client in the courtroom and had there advised him to enter a guilty plea, the Fourth Circuit rightly concluded critically:

> There could be no more than a few minutes' whispered conversation in the rear of the courtroom, amid the distractions of proceedings in progress and under pressure of the defendant's approaching trial.

Id. Even though *no* affirmative harm to appellant had been shown, the court revealed its distress over the potential inadequacies inherent in the attorney-client relationship under those conditions:

> We think that "[t]his was hardly the atmosphere to generate that confidence which should exist between attorney and client, or to invite the kind of free communiciation between them which is essential." [Martin v. Commonwealth of Virginia, supra,] 365 F.2d at 553.

Id.

In conclusion, in the area of the standards required in measuring the timeliness of court appointment of counsel for indigent criminal defendants, the Fourth Circuit has led the way in outlining a healthy prophylactic rule. It has warned that the practice of late appointment may be found "inherently prejudicial" to a defendant's rights, unless strong affirmative proof that resultant prejudice was absent be shown by the state.

This standard, and this rule, both, seem sound. In the instant case, the voluntary defender assigned to appellant appears to enjoy a good reputation and solid credentials. No one, including appellant, has impugned his qualifications in the slightest. By virtue of his tardy appointment, however, and the continu-

ous rush of business handled by his office, he was quite evidently hard pressed to assure a conscientious defense. Yet his testimony at the habeas corpus hearing below rebuts appellant's prima facie case.

The central factual controversy in appellant's trial was over his stabbing of the complaining witness during their fight: whether this act had been offensive or self-defensive in nature. To determine this question, accurate, credible eyewitnesses were of crucial importance. Although appointed counsel did not interview his client himself, he nonetheless did read notes taken at an interview with appellant by a colleague from the voluntary defenders' office. Based on this interview, four persons initially considered as potentially helpful defense witnesses were sent notices to appear at trial. Counsel was not certain even then, however, that those so noticed were in fact witnesses to the incident.[2] Appellant's appointed trial counsel interviewed defense witnesses half an hour before the first day of trial. When some whom he had expected to appear failed to show up, he was obliged to tell the trial court in frustration:[3]

> If Your Honor please, my other witnesses apparently have evaporated along with many other things this week. * , * *

In declining to ask for a continuance, counsel explained that he had[4]

> decided that since I had no reasonable expectation of their [the absent defense witnesses'] helping me * * * there was no point in continuing the case

once they had "evaporated". Furthermore, appellant himself took the stand, where he evidently was not a successfully credible witness in his own defense. At the habeas corpus hearing below, counsel was unable to say that he had been insufficiently prepared to go to trial.[5]

On balance, therefore, in this admittedly close case, we are unable to perceive an unrebutted prima facie denial of appellant's right to the effective assistance of counsel from the late appointment of the voluntary defender on the eve of his trial. The situation reaches very close to, but does not attain, the stage where prejudice to the defendant inherent in appointed counsel's unpreparedness renders it incumbent upon the state to rebut the presumption of actual harm caused by tardy appointment.

In similar situations, however, harm has been, and certainly may be apparent. Mere appointment before trial of counsel to represent an indigent criminal defendant is not enough. Legal aid must be administered by trial courts for indigents under such conditions that their representation approximates in its vigor, zeal, and thoroughness that of counsel retained and paid by those other defendants who can afford to do so. The need for careful scrutiny in the matter of adequate opportunity for preparation by appointed defenders is certainly as important as any desire to dispose of clogged dockets.

Should the trial court fail to appoint counsel sufficiently in advance of trial to prepare defendant's case in a reasonably thorough manner, and should defendant on collateral attack establish a prima facie case that the hasty appointment of legal assistance may have been inherently prejudicial to his trial by precluding him from the advantage of an adequately prepared defense, then it follows logically that the state should bear the brunt of rebutting the presumption of injury inherent in its skimpy compliance with the sixth amendment command.

The hopeful practical consequence of our rule thus enunciated will be that the states and their judicial systems in the Third Circuit will become more careful in permitting appointed counsel to fulfill

---

2. Notes of testimony, supra at 44 & 55.

3. United States ex rel. Mathis v. Rundle, 266 F.Supp. 1003, 1006 (E.D.Pa.1967).

4. Notes of testimony, supra at 58.

5. Id. at 46.

in a realistic manner the function which they should have been responsibly assuring all along.

Appellant's other claims we find lacking in merit. His allegations that the prosecution knowingly used perjured testimony and that the introduction into evidence of his prior convictions violated due process were adequately answered in Judge Wood's opinion below, United States ex rel. Mathis v. Rundle, 266 F. Supp. 1003, 1006 (E.D.Pa.1967). His claim that lack of representation at the preliminary magistrate's hearing violated his right to counsel has already twice been answered by this circuit, see United States ex rel. Maisenhelder v. Rundle, 229 F.Supp. 506 (E.D.Pa.1964), aff'd, 349 F.2d 592 (3d Cir. 1965); United States ex rel. Parker v. Myers, 233 F. Supp. 563 (E.D.Pa.1964), aff'd, 341 F.2d 303 (3d Cir. 1965) (mem.). Cf. United States v. Wade, 388 U.S. 218, 227, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (dictum); Stovall v. Denno, 388 U.S. 293, 296–301, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

The judgment of the district court will be affirmed.