STATE
*vs.*
PETER F. CARLL

Kennebec.   Opinion, June 7, 1965.

*Bernard R. Cratty,* County Attorney for Kennebec County, for the State.

*Philip Bird, Esq.,* for Defendant.

SITTING: WILLIAMSON, C.J., WEBBER, TAPLEY, SULLIVAN, MARDEN, RUDMAN, JJ.

WEBBER, J. The respondent, having been found guilty by a jury of the crime of breaking, entering and larceny in the nighttime, brings this case forward for review on exceptions.

The first four exceptions deal with the appointment of counsel for respondent, the denial of respondent's request for continuance and with related matters which may all be considered together. A review of the material facts is required in order to determine whether or not there was any abuse of discretion on the part of the justice below. In the early part of June, 1964 the grand jury returned an indictment against the respondent who was then in Massachusetts. On June 11, 1964 a Massachusetts attorney entered a special appearance for the respondent in the Kennebec County Superior Court. On June 30, 1964 the respondent was arraigned and was admitted to bail pending trial. On this occasion his Massachusetts counsel was present in court and requested a continuance of the case to the term of court to be held in the following October. This attorney represented to the court that local counsel would be employed. After further discussion with the court it was stipulated and agreed that the request for continuance to the next term was withdrawn, that the Massachusetts counsel would not be representing the respondent at trial, and that the latter "was obtaining local counsel." The respondent did in fact employ and consult with a Waterville attorney within ten days subsequent to July 1, 1964. On July 23, 1964 this attorney informed the court that he had advised the respondent of his "rights and opportunities" but the respondent "apparently feels he would be more satisfied if he were represented by other counsel, so he has informed me that he would like to have me disassociate myself from the case." The court then interrogated the

respondent and elicited from him the information that he had requested that the attorney move for a continuance of the case to the "fall term", and upon being informed by him that such a request would not be granted was no longer interested in retaining him as counsel. The court then inquired directly why the respondent felt that the case should be continued. The respondent replied only that he lacked confidence in himself, that he did not feel able at this time to go to trial, that he had not had the proper amount of time with his counsel, that he had not had a chance to consult with another attorney, and that he had financial problems. The court then reviewed the circumstances at length, reminding the respondent that he had already had more than three weeks to obtain counsel and prepare his defense and that he offered no proper justification for not having done so. The respondent then disclosed that on the previous day he had called Mr. Stanley Bird, also an attorney in Waterville. He stated, however, that Mr. Bird did not represent him "as yet." The court thereupon permitted the repondent's then counsel to withdraw and offered the respondent an additional period of six days in which to consult new counsel and prepare for trial. The court warned the respondent that no further delays would be granted. Respondent agreed to employ counsel that day and the court instructed him either to have his new counsel enter an appearance on the following day or to present himself in court in order that counsel might be appointed to represent him. On the following day, July 24, 1964, the respondent again appeared but without an attorney and filed with the court a formal written motion for continuance setting forth that the firm of Bird & Bird would not be able to represent the respondent at the pending trial because of prior commitments and lack of time for adequate preparation. Mr. Philip Bird of that firm was present in the courtroom but took no part in the proceedings on the motion. The motion was then denied and the court proceeded to interrogate the

respondent as to his financial ability to pay counsel. The respondent disclosed that he had no funds available for that purpose and that he owned no property except an automobile of undisclosed value in Massachusetts. The court then stated that he would appoint counsel, to which the respondent objected on the ground that he "would like to have" his own attorney. At this point the following colloquy occurred which, since it reveals the unyielding attitude of the respondent, is reproduced in its entirety:

"THE COURT: I have no reason for you not to have your own attorney but you were given an opportunity to retain counsel and you do not have any. This case is going to be tried Wednesday morning. The reason I came back here today was to make certain you did have counsel. Did you try to contact other counsel after you found that Mr. Bird was going to be unavailable for next Wednesday?

MR. CARLL: Mr. Bird is the one I wanted for my attorney.

THE COURT: Are you aware of the fact that Mr. Bird will not be available for trial of this case next Wednesday?

MR. CARLL: Yes, I am.

THE COURT: Do you have presently other counsel who is prepared to represent you in connection with the trial next Wednesday?

MR. CARLL: Mr. Bird would be the only one I would want to represent me.

THE COURT: You understand that Mr. Bird will not be available for trial next Wednesday morning?

MR. CARLL: That is why I asked for the continuance.

THE COURT: The continuance has been denied. Do you have anyone else who will be available who can represent you next Wednesday?

MR. CARLL: No, I do not have anyone."

The court then appointed Mr. Richard J. Dubord to represent the respondent and arranged for the respondent to be transported to Mr. Dubord's office for consultation forthwith. Jury trial commenced five days later and an examination of the trial record makes it apparent that court appointed counsel conducted the defense with skill and competence. The exceptant, however, challenges the refusal to grant respondent's motion for continuance, the court's finding of indigency, his appointment of counsel not of respondent's own choice and his fixing of the 29th day of July as the date for commencement of trial.

The respondent seeks to raise constitutional issues related to the right to counsel but no such issues are presented on these facts. As already noted, he was at his trial represented by a reputable and experienced attorney who has since become the Attorney General of the State of Maine and who at no time claimed any disadvantage in preparing his case. A presiding justice must maintain control of his docket if there is to be an orderly disposition of litigation. Whether or not a case is to be continued from term to term is within the sound discretion of the court and in a given case we look only to see if there has been a clear abuse of that discretion. The test is whether the granting or denying of a continuance is "in furtherance of justice." *State* v. *Hume*, (1951) 146 Me. 129, 78 A. (2nd) 496. Under circumstances not unlike those presented in the instant case the Illinois court determined that there was no abuse of discretion. *People* v. *Bimbo*, (1938) 369 Ill. 618, 17 N.E. (2nd) 573. In that case the defendant had had four attorneys in succession appear for her but on the date set for trial was unrepresented. The court refused to continue the matter further but appointed the public defender to represent her even though technically she was not entitled to court appointed counsel.

In the instant case it is apparent that the respondent was determined from the outset that his case should not be tried until October, 1964 although he was never able to show adequate cause for such long delay. His stubborn insistence on this disposition of his case forced the withdrawal of the local attorney employed by him and clearly motivated his demand that he be defended by attorneys who were not then available to undertake his case. He failed for approximately a month to take reasonable and adequate steps to prepare for a trial which he knew to be imminent. A criminal respondent is ordinarily entitled to employ counsel of his own choice but that does not mean that the operation of the court must be adjusted to conform to his whim or preference. The attorney of his choice must be one who is available to meet the calendar of the court. We are satisfied that every reasonable consideration was afforded this respondent by the presiding justice and that his rights to counsel and a fair trial were fully protected. We see no abuse of discretion and the first four exceptions must be overruled.

The 5th, 6th and 7th exceptions may be considered together. They relate to the admission of photographs of fingerprints of the accomplice Osborne. The ground of objection was that these were not the prints of the respondent, no conspiracy being alleged. Respondent takes nothing by these exceptions. The exhibits were properly admitted as links in a chain of circumstantial evidence pointing to the guilt of the respondent. They were persuasive evidence that one Osborne forced a safe from which property was stolen. They are linked to the case against the respondent by his admission that at all material times he was with Osborne.

The 8th and 9th exceptions relate to questions asked by the State over objection. The exceptions fail to inform us whether or how the questions were answered or how the

respondent claims to have been prejudiced thereby. Our reading of the record satisfies us that no prejudice did result, nor was there error in permitting the questions to be asked. These exceptions are insufficient and must be dismissed.

The 10th exception arises from the denial of a motion to strike from the record all testimony with respect to the Osborne prints. For the reasons discussed above respondent shows no error in the ruling of the court.

The final exception stems from the denial of a motion made by respondent at the close of the evidence for a directed verdict. It is unnecessary to review here the chain of circumstantial evidence adduced by the State. It is enough to say that the jury could properly conclude that this evidence and reasonable inferences to be drawn therefrom, unexplained and uncontradicted, eliminated every reasonable hypothesis except that of the guilt of the respondent and his accomplice. The case was properly submitted to the jury for its verdict.

The entry will be:

> *Exceptions 1 to 7, inclusive, 10 and 11 overruled.*
>
> *Exceptions 8 and 9 dismissed.*
>
> *Judgment for the State.*